## Blodgett's Estate.

1. Where testator owned royalties accruing under a coal lease, and by will gave all his estate to his wife for life with remainder to his children, the widow during her lifetime was entitled to the entire royalties and not merely to the interest thereon.

2. In such case the royalties pass directly to the life tenant, there being no debts, and as no trust was created in the will, the intervention of a trustee or an executor is not required.

Argued April 12, 1916. Appeal, No. 112, Jan. T., 1916, by T. J. Blodgett, E. V. Blodgett and Mary Drum, from decree of O. C. Luzerne Co., refusing a citation, in Estate of Asahel Blodgett. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Petition for a citation.

The facts appear in the following opinion of FREAS, P. J.:

A. B. Blodgett, the grandfather of our petitioners, entered with others into a lease dated April 13, 1871, of all the coal under certain lands, for the term of ninety-nine years, in consideration of a fixed rate per ton for coal mined, but not less than a stipulated sum each year. Minimum royalties were paid until 1891, when the mining operations were commenced, and full royalties from that time to the present. This lease was construed in Lazarus's Est., 145 Pa. 1, to be a sale of the coal, and

that the rentals maturing after the death of the grantor were payable as purchase-money to his administrators, and distributable as personalty to those entitled thereto.

The said A. B. Blodgett died May 12, 1893, leaving a will reading in part as follows:

"Item: I give and bequeath to my beloved wife Mary Blodgett the use, improvement and income of all my estate, real, personal and mixed, during the term of her natural life, and the reversion or remainder of the same after my death to my children, their heirs and assigns, in common, share and share alike."

One of the children of said A. B. Blodgett, deceased, was Asahel Blodgett, who survived his mother and died May 27, 1899, and whose will reads as follows:

"I make my last will appointing my wife Catherine executrix to whom I give all my estate during her natural life, and then to my children in equal shares."

Asahel Blodgett left to survive him a widow, Catherine, and three children, the petitioners, by a former wife. Catherine took out letters testamentary upon her husband's estate and on May 25, 1900, filed what purports to be her first and final account, confirmed absolutely July 6, 1900, charging herself with coal royalties amounting to $155.46, and taking credit for preferred claims of $242.47, leaving a balance of $87.01 as due the executrix. To this account she added the following statement:

"There are no unpaid creditors known to the executrix. Coal royalties accruing under said lease, from the interest of A. B. Blodgett, deceased, therein, will come into the hands of accountant, in addition to those above specified, and will be put into this account hereafter. Accountant has also paid sundry debts of decedent, for which she will take credit hereafter. (Signed) Catherine Blodgett, executrix."

The petitioners are the children of Asahel Blodgett and they ask for a citation on Catherine Blodgett to file

an account as executrix of their father's estate. The purpose of the citation is to compel her to account as executrix for all coal royalties she has received under the will of her deceased husband Asahel, on the theory that the widow is entitled only to the interest on the royalties accruing during her lifetime and not to the royalties themselves. The widow admits the receipt of royalties paid to her of $5,596.57, or an average of $385.82 per year, which is the entire income from her husband's estate. She claims the principal of these royalties as her own, as life tenant under her husband's will.

Asahel, our decedent, died seized under his father's will of a one-ninth interest in the royalties accruing under the said lease. In passing from the father who opened the mine to his son, the estate underwent no alteration as to kind or nature. It possessed all the legal qualities in the hands of the son that it did in those of the father, and their rights thereto were exactly similar. Asahel gave to his widow Catherine an estate of the same kind as his father gave to his widow Mary, viz: a life estate in his coal royalties.

Asahel gave to his widow all his estate during her natural life, which means that he gave her the income of all his estate as long as she lives, with remainder to his children. It is contended that the bequest was to her as executrix, and not personally; but as an executrix as such does not have a natural life it is clear testator had no such intention. That he intended to give his widow the principal of the coal royalties we have no doubt. They were practically all the estate he had and the principal is sufficient for her support only with great economy, and the interest on them would not keep her alive. No trust was created by his will, for under the law none was necessary.

So far as the interest of the life tenant is concerned we cannot see that the decision in Lazarus's Est., 145 Pa. 1, altered the law in any particular. Before that decision it was repeatedly held that the rents accruing from

a coal lease, whether the mine was already opened at the
death of the testator or power given in the will to sell,
were "income" within the meaning of the will, and as
such should be paid absolutely to the life-tenant: Eley's
App., 103 Pa. 300; Woodburn's Est., 138 Pa. 606.   In
Park's Est., 173 Pa. 190, it was held that the Pennsyl-
vania cases show a favorable construction given bequests
of income and that that class of cases in which the earn-
ing for coal and royalties in oil have been treated as in-
come, although they consume the principal, are striking
illustrations of the proposition.   It is true that in Gard-
ner's Est., 199 Pa. 524, it was held that after the death
of the owner royalties go to the executors, and not to
the heirs; but it is explained in Duffy's Est., 209 Pa.
390, that that is the rule only where they are subject to
debts existing at testator's death and costs of adminis-
tration of his estate.   It was also held in the latter case,
that the widow was entitled to collect the royalties her-
self without the intervention of the executor, there being
no debts.

Nor can we see how McFadden's Est., 224 Pa. 443,
supports the contention of the petitioners.   In that case
counsel for appellants conceded that where the lease is
made in the lifetime of the testator, or where the lease is
made under a power given in a will, the royalties are in-
come and payable to the life-tenant.   All that the court
there found was that, where a testator died seized of two
tracts of land, the life tenant was not entitled to the
royalties from the tract on which there was no open mine
in the lifetime of the testator and concerning which he
had given no power in his will to lease or sell.   There is
in that decision no denial of the right of the life-tenant
to the principal of the royalties in the tract opened in tes-
tator's lifetime.

The account filed by the executrix is peculiar, in that
she accounts for coal royalties which she now claims as
her own, but failed to account for $500 in cash and house-
hold goods which she now admits she received.   She tes-

214          BLODGETT'S ESTATE.

tifies she paid all the debts of testator and divided the balance of the money and the household goods among herself and the step-children. If her testimony is not true, it could have easily been contradicted but was not. This amounted to a family settlement and after the lapse of seventeen years it is too late to question it: Walworth v. Abel, 52 Pa. 370.

As the royalties amounting to $155.46, for which she accounted as executrix, were applied by her to the payment of preferred debts of testator, we find they were correctly applied, if needed for that purpose. The note appended by the executrix to her account, that she would thereafter account for royalties as they accrued, did not bind her to do so, for it was made in ignorance of her rights under the will. Under Duffy's Est., 209 Pa. 390, the royalties pass directly to the life-tenant, there being no debts, and as no trust was created in the will the intervention of a trustee or an executor is not required. There being no assets in the hands of the executrix for which she need account, the petition of the remaindermen must be refused.

The court refused the petition. T. J. Blodgett, E. V. Blodgett and Mary Drum appealed.

*Error assigned* was in refusing the petition.

*W. Alfred Valentine,* with him *G. Fred Lazarus,* for appellant.

*John E. Jenkins,* with him *William R. Stuckert,* for appellee.

PER CURIAM, May 23, 1916:

We agree with the conclusion of the court below, that the coal royalties in question belonged to the widow, as life-tenant of the estate of her former husband, and as such they passed directly to her. As there were no debts of the husband, the intervention of the executor was un-

necessary. See Duffy's Est., 209 Pa. 390. The order of the court below, refusing petition to compel the executrix to account, is affirmed.