GEORGE L. CRAIG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PERCY L. CRAIG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PRESSLY T. CRAIG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MATILDA S. McCREADY (FORMERLY HECK), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY E. C. BRACE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7582–7586.    Promulgated June 24, 1927.

1. Under the laws of Pennsylvania as they existed prior to June 7, 1917, executors of a will had no right to the rents arising from the real estate of the decedent unless such right was conferred upon them by the will and such rents, although collected by the executors, did not become income of the estate but remained the income of the devisees.

2. Where the devisees under a will conferred upon the executors power to collect and make certain dispositions of the rents of real estate devised to them, the executors acted as the agents of the devisees and receipt of rent by such agents was receipt by the devisees.

*Clarence A. Miller, Esq., Ed. B. Scull, Esq.,* and *J. M. Cumming, C. P. A.,* for the petitioners.
*J. W. Fisher, Esq.,* for the respondent.

These proceedings were, by motion made and granted, consolidated. They involve deficiencies in income tax. In the appeal of George L. Craig, the deficiencies are, for the year 1918, $3,320.91; for the year 1919, $4,978.87; and for the year 1920, $4,088.33. In the appeal of Percy L. Craig, the deficiencies are, for the year 1919, $4,362.11, and for the year 1920, $2,095.85. In the appeal of Pressly T. Craig, the deficiencies are, for the year 1919, $4,412.64, and for the year 1920, $2,236.87. In the appeal of Matilda S. McCready (formerly Heck) the deficiencies are, for the year 1918, $1,354.81; for the year 1919, $3,240.18; and for the year 1920, $3,057.35. In the appeal of Mary E. C. Brace, the deficiency for the year 1920 is $5,207.12.

These deficiencies arise by reason of the inclusion by the Commissioner in the income of each of the petitioners for the respective years above set forth of (1) the income arising from real estate bequeathed to each by the will of Joseph W. Craig, deceased; (2) by the failure of the Commissioner to use as the basis for depreciation the fair market value of certain buildings on March 1, 1913, and (3) by the refusal of the Commissioner to permit as a deduction certain losses incurred in farming operations conducted for a profit. The deficiencies of the petitioners Matilda S. McCready and Mary E. C. Brace, arise from the further fact that the Commissioner used as a basis for determining their gain on a sale of real estate made in 1920, the cost thereof instead of its March 1, 1913, value. The facts were stipulated and our findings of fact conform to the stipulation of the parties.

### FINDINGS OF FACT.

George L. Craig is a citizen of the United States, residing at Sewickley, Pa.; Percy L. Craig is a citizen of the United States, residing at New Castle, Pa.; Pressly T. Craig is a citizen of the United States, residing at Sewickley, Pa.; Matilda S. McCready (formerly Heck) is a citizen of the United States, residing at Sewickley, Pa.; and Mary E. C. Brace is a citizen of the United States residing at Pittsburgh, Pa.

Joseph W. Craig, a citizen of the United States, a resident of the Borough of Sewickley, County of Allegheny, Commonwealth of Pennsylvania, died on March 5, 1912, having, on June 20, 1911, made his last will and testament, the pertinent parts of which read:

THIRD. My executors shall renew and continue from time to time, all of my endorsements on negotiable paper for the benefit of any corporation or other persons, for the period of two years after my decease, if so long necessary, in the judgment of said executors, to prevent financial embarrassment to the corporations or friends whom I may be thus accommodating; and such endorsements shall continue to bind my estate.

FOURTH. My executors shall manage and dispose of all my shares of capital stock in the various corporations in which I am interested, with the same powers as I myself would have, if living, and with the view of pushing successfully the business of said corporations until such time as my debts are all paid and the debts of the various corporations are reduced to such amounts that the corporations can be successfully conducted without help from my estate.

FIFTH. I hereby give my executors full power to sell and convey any and all of the property of my estate, at any time and from time to time, when the same may be done for the best interests of my estate, without the obligation upon the part of any purchaser or purchasers to see to the application of the purchase money, and to reinvest the proceeds; such sale, conveyance and reinvestment to be, at all times and in all respects, within the judgment and discretion of my executors.

SIXTH. I hereby bequeath all jewelry which may be owned by me to and among the daughters of my sisters and brothers, the same to be divided and

allotted to each legatee by my sisters, Mrs. E. E. Heck and Mrs. George L. Craig, in such shares as they may judge appropriate, and each legatee's share shall be delivered by my executors to the parents or surviving parent of the legatee, who shall hold such share in trust for the legatee until her majority, at which time, it shall be delivered to her.

THIRTEENTH: I bequeath and devise all the residue of my estate unto my two sisters, MRS. MARY E. C. BRACE and MRS. DAISIE S. C. HECK, and four of my brothers, to-wit: EDWIN S. CRAIG, GEORGE L. CRAIG, PERCY L. CRAIG and PRESSLY T. CRAIG, share and share alike; provided, however, that if any one or more of my said sisters or four brothers shall die in my lifetime, without leaving lawful issue, then and in such case the share or shares of my estate hereinbefore given to such one or more, so dying, shall not lapse, but shall go to and vest in the survivors of my said residuary devises and legatees and in the representatives of that one or more of said residuary devises and legatees that may have died in my lifetime, leaving issue; it being my intention not to die intestate as to any portion of my estate.

FOURTEENTH: I appoint my brothers, EDWIN S. CRAIG and GEORGE L. CRAIG to be the executors of and trustees under this, my will; in case a vacancy occurs in either of said offices, either before or after my said two brothers enter on the discharge of their duties under this appointment, I appoint my brother, PERCY L. CRAIG, to fill such vacancy; in case my brother, PERCY L. CRAIG cannot or shall not accept such appointment, or in case a second vacancy occurs in said offices, either before or after my said brothers enter on the discharge of their duties under this appointment, I appoint my brother, PRESSLY T. CRAIG, to fill such vacancy; and in case my brother, PRESSLY T. CRAIG, cannot or shall not accept such appointment, or in case a third vacancy occurs in said offices, either before or after my said brothers enter on the discharge of their duties under this appointment, I appoint THE UNION TRUST COMPANY OF PITTSBURGH to fill such vacancy,—The Union Trust Company of Pittsburgh to act as co-executor and co-trustee so long as one of my brothers shall continue to act as an executor and trustee under this, my will, and as sole executor and sole trustees thereafter.

No bond shall be required from any one of my said four brothers or from The Union Trust Company of Pittsburgh for the faithful discharge of his, or its duties as executor or trustee under this, my will.

The said last will and testament of Joseph W. Craig was admitted to probate in the Orphans' Court of the County of Allegheny, Commonwealth of Pennsylvania, on the 15th day of March, 1912, and Edwin S. Craig and George L. Craig were appointed executors of the said last will and testament, having been named in the will as said executors.

The said executors entered upon their duties and in the course of their administration of the estate have filed five accounts in the Orphans' Court of Allegheny County, as follows:

|  | Number | Term |
|---|---|---|
| First and partial account | 137 | April term, 1913. |
| Second and partial account | 96 | November term, 1913. |
| Third and partial account | 340 | September term, 1914. |
| Fourth and final account | 47 | April term, 1915. |
| Supplemental account | 137 | December term, 1917. |

The said executors paid all of the debts, funeral expenses, administration expenses, mortgages and the specific legacies and in addi-

tion thereto distributed to the residuary legatees an aggregate of $1,831,646.73, all of which is shown by the said accounts and the decree entered November 16, 1922, which were confirmed by said court and decrees entered thereon which became absolute, no exceptions to said decrees having been taken by any of the parties in interest in said estate.

By the terms of the will of Joseph W. Craig, all of his residuary estate was devised and bequeathed to his four brothers and two sisters, share and share alike, five of whom are the petitioners herein, Edwin S. Craig, another brother having died on or about the 27th day of December, 1921.

The property of Joseph W. Craig included, in addition to personal property, some thirty separate properties varying widely in character, use and value.

On June 24, 1912, the petitioners entered into an agreement with the persons named as executors in the will of Joseph W. Craig, which reads:

#### MEMORANDUM OF AGREEMENT

Joseph W. Craig's Devisees with each other and with his Executors:

Made this 24th day of June 1912, by and between Edwin S. Craig, unmarried (individually) George L. Craig (individually) and Henrietta B. Craig his wife, Pressly T. Craig, unmarried, Matilda S. Heck (usually known in the family as Daisie S. C. Heck) and Emile E. Heck, her husband, all of Sewickley, Allegheny County, Pennsylvania, Mary E. C. Brace and N. Collins Brace, her husband, of Pittsburgh, Allegheny County, Pennsylvania, and Percy L. Craig and Eleanor M. Craig, his wife, of New Castle, Lawrence County, Pennsylvania, parties of the first part, and Edwin S. Craig and George L. Craig and their successors, executors of the will of Joseph W. Craig, late of Sewickley, Allegheny County, Pennsylvania, deceased, parties of the second part.

Whereas the said Joseph W. Craig died on the 5th day of March 1912, testate and letters testamentary on his estate have been issued by the Register of Wills of said Allegheny County to Edwin S. Craig and George L. Craig aforesaid and

Whereas the said Joseph W. Craig did by his last will (see Will Book, Vol. 112, page 483) devise and bequeath to Mary E. C. Brace, Matilda S. Heck (Daisie S. C. Heck), Edwin S. Craig, George L. Craig, Percy L. Craig and Pressly T. Craig, of the parties of the first part hereto, all of his residuary estate, which residuary estate is composed of both personal and real property and,

Whereas the said parties of the first part deem it to their, and each of their interest and advantage to supplement the power and control given by the will aforesaid to the Executors over the said real property; now

Witness That the parties of the first part have agreed and do hereby agree each for him or herself the one with the other and to and with the parties of the second part in consideration of the mutual benefits to be derived as follows, viz:

First. That all of the real estate of the said Joseph W. Craig deceased, devised by the residuary clause of his will aforesaid, to Mary E. C. Brace, Matilda S. Heck (Daisie S. C. Heck) Edwin S. Craig, George L. Craig, Percy L. Craig and Pressly T. Craig and situate·in Allegheny and Beaver Counties,

Pennsylvania, or wheresoever the same may be found or situate shall be and continue under the exclusive management and control of the executors for the time being, of the estate of Joseph W. Craig, deceased, for the full term of five (5) years from the date hereof; and thereafter until the powers herein given shall have been specifically revoked or until the end of such shorter time as said Executors may in their discretion determine; but no revocation of this agreement by a less number than all of the parties and no termination hereof by the executors shall abridge or annul the power of the executors under the eighth paragraph of this agreement to manage the said real estate while a partition proceeding is being carried on.

Second. That said Executors are hereby empowered to let and demise the said real estate in such parcels and for such term or terms not exceeding five (5) years for any one term, and upon such rent or rents as they may determine advisable for the best interests of the owners of the real estate, and to demand, sue for, recover, receive and receipt for all sums of money which may become due and owing to such owners by means of such leasing and letting.

Third. That said second parties shall have the power to sell, exchange or dispose of any of the real estate hereinbefore mentioned, in fee simple or for any less estate to any person or persons for such price or prices and upon such terms as to payment, as they shall deem sufficient and for these purposes they are hereby empowered to execute acknowledge and deliver on behalf of the parties hereto any deed or deeds lease or leases or other assurance or assurances with general or special covenants of warranty which they may deem necessary to fulfill and perform the contracts of sale exchange leasing or other disposition which they may make under the said powers; and to demand, sue for, recover and receive and receipt for the consideration money or moneys arising out of such transaction; it being understood that the powers and authority herein given shall under no circumstances be construed as a limitation of Clause "Fifth" of the will of Joseph W. Craig deceased, but only as an amplification thereof and supplemental thereto.

Fourth. That the parties of the first part having expressed a desire that the homestead of Joseph W. Craig, deceased, at Bank and Broad Streets in the Borough of Sewickley (see Deed Book Vol. 604, page 458) and the "Staunton Farm" in Moon Township, Allegheny County, Pennsylvania (See Deed Book Vol. 1114, page 534) and his Mausoleum and burial lot in the Sewickley Cemetery, be kept in like good order and condition as during the lifetime of Joseph W. Craig the parties of the second part are hereby specially authorized to pay from the rents, issues and profits of the other real estate herein committed to their charge such sum or sums as they deem necessary to maintain and keep in like order as aforesaid the said two properties and mausoleum and burial lot.

Fifth. That said executors are hereby expressly empowered to use the rents, issues and profits derived from any part of said realty as well as the net proceeds of sale of any part thereof, shall in their judgment be necessary to pay the taxes, insurance and other expenses of maintaining all and every part of the said real estate in good condition and of performing this agreement including a reasonable compensation to the executors for their services, and to pay mortgages present and future, against said real estate; and also to pay out of the residuary personal estate all collateral inheritance taxes against the said real estate for which the devisees under the will of Joseph W. Craig deceased may be liable; and at such time or times as said Executors shall deem it safe so to do, they shall return or repay to the said residuary personal estate, out of the rents issues, profits and net proceeds of sales of the real estate, such sum or sums as may have been paid for collateral inheritance taxes as aforesaid, if the

same shall not have been already repaid to the Executors by the parties liable therefor or shall not have been allowed to the Executors as a credit or credits on the distributive shares of the parties in the residuary personal estate as aforesaid which credit the Executors are hereby authorized to take.

Sixth. That in the event of the destruction or injury of any of the buildings being a part of said realty, the second parties hereto shall collect all insurance moneys that may thereupon become due and payable; and in their discretion, may use said moneys in repairing or replacing the building or buildings so injured or destroyed or divide said insurance money amongst the persons entitled thereto as their interest may appear.

Seventh. That said second parties are hereby given full and complete authority to institute, maintain prosecute and defend any and all suits at law or in equity which they shall deem necessary to establish or protect the title or possession of the parties hereto or of the real estate herein committed to the charge of the second parties and to recover damages for any and all injuries done thereto, and to recover rents' and other moneys in the nature of rents which may be due thereon, and to distrain for such rents and other moneys.

Eighth. That no court proceedings to partition the said real estate to and amongst those entitled thereto shall be instituted at any time within five (5) years from the date hereof, by any of the parties hereto, and that when such partition proceedings are instituted the parties of the second part shall manage said real estate under the terms of this agreement until the final decree allots the same in purparts to the persons entitled thereto or confirms the sale or sales thereof purchasers.

Ninth. After and subject to all of the payments necessary for carrying this agreement into effect the said Executors shall as often as they may deem practicable and at least once a year, if possible divide and pay over the net rents issues, profits and proceeds of sales, of real estate among and to the persons entitled to the same.

Tenth. All the acts of the parties of the second part in letting and leasing, collecting rents and otherwise managing the real estate aforesaid done before the full execution of this agreement are hereby ratified and approved and are to have the same force and effect as if done or performed after the due execution of this agreement.

Eleventh. That nothing herein contained and no act or acts done in pursuance hereof, shall be construed so as to work a conversion of realty into personalty or personalty into realty as to the parties hereto or as in any manner impairing or lessening any of the powers or the use thereof, given by the will of said Joseph W. Craig, deceased, to his Executors.

Twelfth. The parties of the second part accept their duties under this agreement and will endeavor to perform the same faithfully.

Thirteenth. This agreement shall extend to and in favor of, and be binding on, the heirs executors administrators assigns and successors of the various parties hereto; and the word "parties" wherever used in this agreement, shall include the said five classes of persons and shall be construed with reference to the proper class whenever necessary to sustain this agreement and carry its provisions into effect.

In Witness Whereof we have hereunto affixed our hands and seals, the day and year first above written.

(Here follow signatures.)

For the taxable years 1917, 1918, 1919, and 1920, the persons named as executors in the will of Joseph W. Craig, filed returns of income

from the real estate referred to in the said agreement, on Form 1040 (nonfiduciary) of the office of the Commissioner of Internal Revenue and did not deduct from the said income any amounts paid or credited to the petitioners, and paid the amounts of tax thereon shown to be due, as follows:

| | |
|---|---|
| 1917 | $5,149.55 |
| 1918 | 12,414.14 |
| 1919 | 11,930.26 |
| 1920 | 6,608.48 |

The income reported on said returns (Form 1040) includes the following:

| Year | Rent | Interest | Deductions |
|---|---|---|---|
| 1918 | $53,131.28 | $454.73 | $115.37 |
| 1919 | 57,557.87 | 491.89 | 106.27 |
| 1920 | 40,240.13 | 643.12 | --------- |

None of the said income was included in any of the accounts filed by the Executors of the said Estate in the Orphans' Court of Allegheny County or distributed by any decree of that Court.

The net income from the real estate covered by the said agreement of June 24, 1912, for the taxable years 1918 to 1920, inclusive, and the amount thereof distributed to the six devisees in equal shares, was:

| Taxable year | Amount of net income | Amount distributed to devisees |
|---|---|---|
| 1918 | $53,470.04 | $18,000.00 |
| 1919 | 57,943.59 | 24,000.00 |
| 1920 | 40,883.25 | None |

At the time of his death, the direct liabilities of Joseph W. Craig were bonds secured by mortgage on his real estate, in the amount of $172,900; $45,362 accounts payable for construction work completed on building on said real estate, shortly prior to or about the time of his death; $29,684.40 general accounts payable; $290,000 notes payable (held by banks); in all $537,966.40, and his contingent liability as endorser aggregated $443,000. All of the said indebtedness was fully paid and the executors were relieved of all contingent liability as endorser, prior to September 23, 1914, as shown by the probate records of said estate.

The persons named as executors in the will of Joseph W. Craig, on June 8, 1921, paid to the State of West Virginia, the sum of $50 as tax on the capital stock of the Mexican Sulphur Co., a West Virginia corporation, and the statutory attorney's fees for the period from

July 1, 1921, to June 30, 1922, and on June 12, 1922, made a similar payment.

In the first and partial account of the executors, filed March 6, 1913, the jewelry refererd to in paragraph six of the will of Joseph W. Craig was included and the collateral inheritance tax paid thereon, the value of said jewelry being fixed by the decree of the Orphans' Court of Allegheny County, Pennsylvania, entered May 28, 1913, at $8,107. By the terms of this decree, the distribution of this jewelry was suspended pending the report of the parties named in the will to make distribution thereof.

In the second account of the executors, filed October 13, 1913, the third account, filed August 4, 1914, and the fourth account filed February 5, 1915, this jewelry was referred to, but no distribution was actually made.

On September 28, 1922, Mrs. E. E. Heck, and on October 3, 1922, Mrs. George L. Craig, named in the sixth paragraph of the will to make distribution of this jewelry, resigned the trust reposed in them and authorized the persons named as executors in the will of Joseph W. Craig, to make the distribution. Between October 3, 1922, and November 14, 1922, the said persons distributed this jewelry, subject to the approval of the court, and on November 14, 1922, filed with the Orphans' Court of Allegheny County, Pennsylvania, a petition praying that the distribution made by them be ratified, confirmed, and decreed. On November 16, 1922, the Orphans' Court of Allegheny County, Pennsylvania, decreed that the said petition be granted and that the distribution of jewelry made be ratified and confirmed. A certified copy of said petition reads as follows:

IN THE ORPHANS COURT OF ALLEGHENY COUNTY, PA.

No. 137, April Term, 1913

IN THE MATTER OF ESTATE OF JOSEPH W. CRAIG, DECEASED

*To the Honorable, the Judges of said Court:*

Your petitioners, George L. and Percy L. Craig, Executors of Joseph W. Craig, deceased, respectfully represent:

1. Joseph W. Craig, late of the Borough of Sewickley, Allegheny County, Pennsylvania, died March 5, 1912, and his last will and Testament was duly admitted to probate in Allegheny County, Pennsylvania, and is of record in the Register's Office thereof in Will Book Vol. 112, page 183.

2. In and by his said Will he bequeathed as follows:

Sixth. I hereby bequeath all jewelry which may be owned by me to and among the daughters of my sisters and brothers, the same to be divided and allotted to each legatee by my sisters, Mrs. E. E. Heck and Mrs. George L. Craig, in such shares as they may judge appropriate and each legatee's share shall be delivered by my executors to the parents or surviving parent of the legatee who shall hold such share in trust for the legatee until her majority, at which time it shall be delivered to her.

3. In the first and partial account of Edwin S. and George L. Craig, Executors of Joseph W. Craig, deceased, the jewelry in said Sixth paragraph was included and all collateral inheritance tax paid thereon, and as shown by the Decree of this Court entered May 28, 1913, to the above number and term, the value of the said jewelry was fixed at Eight Thousand One Hunded Seven Dollars ($8,-107.00), and "distribution suspended pending report of parties named in decedent's will to make distribution thereof."

4. At a second, third and fourth account filed in this estate, this jewelry was referred to but no distribution actually made.

5. On September 28, 1922, Mrs. Matilda S. Heck, named in said "Sixth" paragraph as Mrs. E. E. Heck, and on October 3, 1922, Mrs. George L. Craig declined to make distribution of the said jewelry and resigned the trust reposed in them and authorized the new Executors of the will to make the distribution, said resignations and authorizations are hereto attached, marked "Exhibit A" and "Exhibit B."

6. All of the legatees entitled to share in said property are now of full age and able to act for themselves and they all requested in writing that the Executors make distribution.

Distribution has, therefore, been made among them subject to the approval of this Court, and they have executed a receipt and release in favor of the Executors, which is hereto attached and marked "Exhibit C."

Your petitioners, therefore, pray that the distribution made by them be ratified, confirmed and decreed by Your Honors and that a notation of the filing of the Decree, Receipt and Release may be made on the Auditor's Report Docket at No. 137 April Term, 1913.

And they will ever pray, etc.

(Signatures follow.)

### DECREE

And Now, November 16, 1922, the above petition presented in open Court and upon consideration thereof it is Ordered, Adjudged and Decreed, that the prayer of the petition be granted and that the distribution made by the Executors at the request of the parties be ratified and confirmed, and that a notation of the filing of the receipt and release be made on the Audit Book at No. 137 April Term, 1913.

Per Curiam.

STATE OF PENNSYLVANIA, *Allegheny County, ss:*

I, JOSEPH N. MACKRELL, Register of Wills and Ex-Officio Clerk of the Orphans' Court in and for the County of Allegheny, State of Pennsylvania, do hereby certify the foregoing to be a true and correct copy of Petition for ratification of Distribution of Jewelry and Decree in the estate of Joseph W. Craig, deceased, at No. 137, April Term, 1913, as the same remains on file and is of record in this office.

Witness my hand and seal of said office, this 27th day of November, 1926.
(SEAL.)                                      JOSEPH N. MACKRELL,
            *Register and Ex-Officio Clerk of Orphans' Court.*

On June 27, 1908, Joseph W. Craig obtained in the Court of Common Pleas of Fayette County, Pennsylvania, a judgment against S. S. Graham, Jr., and A. J. Graham in the sum of $3,500, with interest from March 16, 1908, together with costs. This judgment was revived on June 23, 1913, by the persons named as executors

in the will of Joseph W. Craig by a writ of *scire facias*. The judgment not having been paid, the said persons, in order to keep the judgment alive, obtained another writ of *scire facias* on February 18, 1916. Efforts to collect the judgment having failed, the said persons, in order to keep alive this judgment, obtained another writ of *scire facias* on September 23, 1921, the two latter writs being for $5,338.90, with interest from February 18, 1916, and costs.

The probate records, as found in the office of the Register of Wills of Allegheny County, show no formal decree of the Orphans' Court of Allegheny County, discharging the said executors of the Estate of Joseph W. Craig.

The accounts of the persons named as executors in the Will of Joseph W. Craig, and of all the petitioners herein, are kept on the basis of cash receipts and disbursements, and for the years here involved, the returns of income were filed upon that basis.

The fair value on March 1, 1913, of the lands and buildings owned by Joseph W. Craig, at the time of his death, was as follows:

| Location of property | Value of land | Value of buildings | Total value |
|---|---|---|---|
| 1319 Penn Ave. Pittsburgh [1] | $8, 820. 00 | $1, 112. 50 | $9, 932. 50 |
| 2421 Penn Ave. Pittsburgh [1] | 4, 200. 00 | 800. 00 | 5, 000. 00 |
| 510–512 Federal St. Pittsburgh [1] | 44, 000. 00 | 5, 439. 00 | 49, 439. 00 |
| 208 Smithfield St. Pittsburgh [1] | 79, 100. 00 | 6, 500. 00 | 85, 600. 00 |
| Third Ave. Pittsburgh [1] | 85, 440. 00 | 12, 791. 00 | 98, 231. 00 |
| 1633–39 Penn Ave. Pittsburgh [1] | 25, 250. 00 | 3, 000. 00 | 28, 250. 00 |
| 46 & 48 Eighteenth St. Pittsburgh [1] | 19, 200. 00 | 19, 200. 00 | [2] 38, 400. 00 |
| 20th St. & Penn Ave. Pittsburgh [1] | 18, 000. 00 | 5, 544. 00 | 23, 544. 00 |
| 2017 Penn Ave. Pittsburgh [1] | 7, 200. 00 | 800. 00 | 8, 000. 00 |
| 2025–31 Penn Ave. Pittsburgh [1] | 28, 800. 00 | 3, 740. 00 | 32, 540. 00 |
| 208 E. Stockton Ave. Pittsburgh [1] | 14, 400. 00 | 7, 566. 00 | 21, 966. 00 |
| 416–18 Federal St. Pittsburgh [1] | 72, 000. 00 | 6, 264. 00 | 78, 264. 00 |
| Federal & Montgomery St. Pittsburgh [1] | 48, 400. 00 | 14, 880. 00 | 63, 280. 00 |
| 926 Western Ave, Pittsburgh [1] | 4, 650. 00 | 3, 500. 00 | 8, 150. 00 |
| 806 Penn Ave. [3] Pittsburgh | 60, 000. 00 | 36, 080. 00 | 96, 080. 00 |
| Chestnut St. [4] Pittsburgh | 3, 580. 00 | 10, 456. 00 | 14, 036. 00 |
| Staunton Farm [4] | 22, 000. 00 | 14, 286. 00 | 36, 286. 00 |
| M. K. Farm [4] | 2, 300. 00 | 500. 00 | 2, 800. 00 |
| Purdy Farm [4] | 18, 200. 00 | 2, 000. 00 | 20, 200. 00 |
| McPherson Farm [4] | 8, 940. 00 | 2, 250. 00 | 11, 190. 00 |
| J. R. Brown Farm [4] | 3, 150. 00 | 700. 00 | 3, 850. 00 |
| Stevenson Farm [4] | 18, 410. 00 | 2, 500. 00 | 20, 910. 00 |
| Elliott Farm [4] | 3, 500. 00 | ------- | 3, 500. 00 |
| Homestead of Joseph W. Craig [5] | 15, 960. 00 | 11, 880. 00 | 27, 840. 00 |
| 13th & Pike St. Pittsburgh [1] | 80, 000. 00 | 87, 000. 00 | 167, 000. 00 |
| 18th, 19th & Pike St. Pittsburgh [1] | 52, 944. 00 | 41, 294. 00 | 94, 238. 00 |
| 20th & Pike St. Pittsburgh [1] | 72, 000. 00 | 108, 000. 00 | 180, 000. 00 |
| 21st & Pike St. Pittsburgh [1] | 54, 720. 00 | 98, 496. 00 | 153, 216. 00 |
| Staunton Property Pittsburgh [1] | 10, 800. 00 | 45, 312. 00 | 56, 112. 00 |

[1] Buildings are brick; depreciation rate allowed by Commissioner, 2%.
[2] This property sold in 1920 for $48,448.50.
[3] Buildings are steel and brick; depreciation rate allowed by Commissioner, 2%.
[4] Buildings are frame; depreciation rate allowed by Commissioner, 4%.
[5] No depreciation allowed.

In the taxable years 1918, 1919, and 1920, losses in the conduct of farming operations on farms owned by the petitioners as devisees of Joseph W. Craig were sustained as follows:

| | |
|---|---|
| 1918 | $1, 302. 91 |
| 1919 | 1, 822. 02 |
| 1920 | 1, 498. 91 |

A certified copy of the deed conveying the property described as 46–48 Eighteenth Street, Pittsburgh, Pa., is as follows:

THIS INDENTURE

MADE this 8th day of March, A. D., 1920. BETWEEN EDWIN S. CRAIG (unmarried), GEORGE L. CRAIG and HENRIETTE B. CRAIG, his wife, PRESSLY T. CRAIG (unmarried) EMILE E. HECK and MATILDA S. HECK (also known as MRS. DAISIE S. C. HECK), his wife, all of the Borough of Sewickley, Pennsylvania, MARY E. C. BRACE, widow of N. COLLINS BRACE, deceased, of the City of Pittsburgh, Pennsylvania; and PERCY L. CRAIG and ELEANOR M. CRAIG, his wife, of the City of New Castle, Pennsylvania, all acting by their attorneys in fact, EDWIN S. CRAIG and GEORGE L. CRAIG, Executors of the last will of JOSEPH W. CRAIG, deceased, parties of the first part, and DAVID KELLERMAN of the City of Pittsburgh, Pennsylvania, party of the second part:

WITNESSETH, that the parties of the first part, in consideration of the sum of FIFTY THOUSAND DOLLARS ($50,000), to them paid by the party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey unto the party of the second part, his heirs and assigns, forever.

ALL that certain piece of land situate in the second (formerly the Tenth) Ward of the City of Pittsburgh, County of Allegheny and State of Pennsylvania, described as follows:

(Here follows description)

THE said JOSEPH W. CRAIG died on March 5, 1912, a widower, having by his last will, which was probated in the office of the Register of Wills of said Allegheny County, and is recorded therein in Will Book Vol. 112, page 483, devised all his real estate (including the real estate conveyed by this deed) unto his four brothers and two sisters (all of whom survived him and are parties hereto) to wit: Edwin S. Craig, George L. Craig, Percy L. Craig, Pressly T. Craig, Mrs. Mary E. C. Brace and Mrs. Matilda S. Heck, the last named being called in the will "Mrs. Daisie S. C. Heck" and being usually known to her family and friends as "Daisie" although baptised "Matilda"; and letters testamentary under said will were granted unto Edwin S. Craig and George L. Craig, the executors named therein; and this deed is executed and delivered by the said Executors as the attorneys in fact of the parties of the first part and on their behalf, by virtue of an article of agreement (which is in full force and effect) executed by all of the parties of the first part and dated June 24, 1912, and recorded in the office of the Recorder of Deeds of said Allegheny County in Deed Book Vol. 1756, page 104; and N. Collins Brace; husband of the said MRS. MARY E. C. BRACE and a party to the said agreement, died on November 24, 1917.

THE parties of the first part covenant that they will, on or before July 15, 1920, pay to the Treasurer of the County of Allegheny aforesaid, the taxes which have been assessed, for the year 1920, in favor of the said County against the said land and buildings, which taxes are not yet payable; and it is agreed by all parties hereto that the non-payment of said taxes shall not be construed a breach of any covenants of the parties of the first part under this deed unless such taxes remain unpaid after July 15, 1920.

WITH the appurtenances: To HAVE AND TO HOLD the same unto and for the use of the party of the second part, and his heirs and assigns forever.

AND the parties of the first part, for themselves, and their heirs, executors and administrators covenant with the party of the second part, and his heirs

and assigns, against all lawful claimants, the same and every part thereof to Warrant and Defend.

WITNESS the hands and seals of the parties of the first part by their attorneys as aforesaid.

EDWIN S. CRAIG　[Seal]

HENRIETTE B. CRAIG　[Seal]

EMILE E. HECK　[Seal]

Mrs. DAISIE S. C. HECK　[Seal]

PERCY L. CRAIG　[Seal]

GEORGE L. CRAIG　[Seal]

PRESSLY T. CRAIG　[Seal]

MATILDA S. HECK　[Seal]

MARY E. C. BRACE　[Seal]

ELEANOR M. CRAIG　[Seal]

IN PRESENCE OF—

CHAS. W. BAKER

All by their attorneys in fact

EDWIN S. CRAIG　[Seal]

GEORGE L. CRAIG　[Seal]

*Executors of the Last Will of Joseph W. Craig, deceased.* [*Seal.*]

($50.　U.S.I.R.S. cancelled.)

STATE OF PENNSYLVANIA, *County of Allegheny, ss:*

ON this EIGHTH DAY of March A. D. 1920, before me, a Notary Public of said State and County, personally appeared EDWIN S. CRAIG and GEORGE L. CRAIG, Executors of the last will of JOSEPH W. CRAIG, deceased, acting as attorneys in fact of EDWIN S. CRAIG, GEORGE L. CRAIG and HENRIETTA B. CRAIG, his wife, PRESSLY T. CRAIG, EMILE E. HECK and MATILDA S. HECK, (also known as Mrs. DAISIE S. C. HECK), his wife, MARY E. C. BRACE and PERCY L. CRAIG and ELEANOR M. CRAIG, his wife, and acknowledged the foregoing indenture to be their act and deed and the act and deed of their constitutents and desired the same to be recorded as such.

WITNESS my hand and Notarial seal, the day and year aforesaid.

(Sgd) Chas. W. Baker, (N. P. Seal)

Notary Public.

My commission expires Jan. 15, 1921.

The income in controversy in these appeals is exclusively income from the real estate owned by petitioners as devisees of Joseph W. Craig.

### OPINION.

MILLIKEN: The petitioners contend, first, that the income from the real estate devised to them by Joseph W. Craig, deceased, was income received by the estate of said testator while in process of administration, and was taxable to the executors, and, second, if this is not true, they then contend that the income was received by said executors under the agreement of June 24, 1912, between them and the petitioners; that this agreement created a trust; that under the terms of the agreement, the income was distributable at the discretion of the executors; and that the income should be taxed solely to the executors as trustees. The petitioners cite *Appeal of Brown*

& *Ives, Trustees*, 2 B. T. A. 936, and *Mary L. Barton, Trustee*, v. *Commissioner*, 5 B. T. A. 1008, and contend that these decisions support their contention.

Section 219 of the Revenue Act of 1918 contains the following:

(a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

(2) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests;

(3) Income held for future distribution under the terms of the will or trust; and

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

The petitioners contend that the estate of Joseph W. Craig was still in process of administration at the end of the year 1921, and from this deduce the conclusion that the income from the real estate devised by the said testator to the petitioners, was income received by his estate during the period of administration or settlement. By conceding, for the purpose of this opinion, that the estate was in process of settlement, we are met at the outset with the question whether the income received from the real estate, under the facts of this case, was income to which the estate as such was entitled. It is at once apparent that the income, referred to in the statute as the income of an estate, is income which belongs to the estate and which it is the right and duty of the personal representative to collect. If in this case the income from the real estate did not belong to the executors as such, then it was no more the income of the estate of Joseph W. Craig than if the executors had reached out and brought into the estate their own personal income or the income of any third person. Whether the income arising from the real estate directly devised to the petitioners, was income of the estate of the testator, is to be determined by the laws of Pennsylvania.

From the earliest times down to the passage of the Fiduciaries Act of June 7, 1917 (P. L. 447), it was the law of Pennsylvania that neither an administrator nor an executor, unless authorized by the will of his testator, had any right of control or management of real estate which descended to heirs or was devised to devisees and if such personal representative collected the rents arising from real estate, he acted either as an intermeddler, or, if authorized, as the agent of the heirs or devisees, as the case might be. Among the numerous decisions of the Pennsylvania courts, on this question, are: *Haslage* v. *Krugh*, 25 Pa. 97; *Fross' Appeal*, 105 Pa. 258; *In re Duffy's Estate*, 209 Pa. 390; 58 Atl. 840; *In re Blodgett's Estate*, 254

Pa. 210; 98 Atl. 876; *In re Watt's Estate*, 168 Pa. St. 431; 32 Atl. 25, *In re Reel's Estate*, 263 Pa. 248; 106 Atl. 227; *Kreis* v. *Cartledge*, 262 Pa. 55; 104 Atl. 855.

The rule laid down in the above cases was partially changed by the Fiduciaries Act of June 7, 1917, above referred to. That act provides in part:

Rents of real estate accruing after the death of the owner of such real estate, who shall die on or after the day on which this act shall go into effect, shall be assets for the payment of debts of such decedent whenever the personal estate shall be insufficient therefor.

Referring to this statute, the court said, in *Reel's Estate, supra:*

This is new and very wise legislation, for before its passage, the rents accruing from the real estate of a decedent owner went to his heirs and devisees from the time of his death (*Haslage* v. *Krugh*, 25 Pa. 97; *Fross' Appeal*, 105 Pa. 258); and the heir or devisee of an insolvent decedent took such rents at the expense of the creditors of the estate. To remedy this long-existing injustice by making rents, as well as the land out of which they issue, assets for the payment of the debts of a decedent, the fourteenth section of the Act of 1917 was passed.

Since Joseph W. Craig died long prior to the effective date of the Fiduciaries Act of June 7, 1917, that act does not apply to this case. Under the law of Pennsylvania, as it existed at the date of the death of Joseph W. Craig, the executors of his will had no right or title to the real estate devised to the petitioners, nor had they any right to the rents thereof unless there is found in his will some provision which confers on them such rights.

It is to be observed that the testator did not devise his real estate to his executors but devised it directly to the petitioners. The only provision in his will which gives his executors any power or right whatever with respect to his real estate, is the fifth clause thereof. That clause conferred on the executors a naked power of sale for the purposes of the will and for reinvestment. In this connection it is well to recall that the real estate of the testator was never in danger of sale for the payment of debts. After the payment of all debts and liabilities, the executors distributed among the residuary legatees, $1,831,646.73. Another pertinent fact is that all the testator's debts were paid and his estate relieved of all its contingent liabilities prior to September 23, 1914. Thus, there was no necessity for any sale by the executors for the payment of debts and there were no debts after September, 1914. Nor is it necessary to consider what would have been the result if the executors had sold the real estate for the purpose of reinvestment. It does not appear that they exercised this power. It is stipulated that income in controversy is exclusively income from the real estate owned by the petitioners as devisees of Joseph W. Craig.

The remaining question presented is whether the unexercised power of sale conferred upon the executors, gave them the right to collect the income arising from the real estate which was devised, not to them, but directly to the petitioners. This question has been answered in the negative by the Pennsylvania courts since the decision in 1855 in *Blight* v. *Wright*, 1 Phila. 549. See also *Estate of John Myers*, 9 Phila. 310; *Walker's Appeal*, 116 Pa. St. 419; 9 Atl. 654; *Kreis* v. *Cartledge, supra;* and *Watt's Estate, supra.* In the last case, the facts were that an executor upon whom had been conferred a power of sale, had in his hand, rentals to the amount of $25,000, which he had appropriated to the estate from real estate devised, as in this case, directly to the beneficiaries. The executor claimed the right to treat this fund as assets of the estate and apply it to the payment of legacies. This right the devisees denied. The court thus stated the question:

> The question raised by this appeal may be stated thus: Who is entitled to the possession of a testator's real estate after his decease? In the case of an intestate, the question would not be regarded as an open one. Upon his decease, his personal estate goes to his administrators, but his real estate descends to his heirs at law.

Again the court said:

> The administrator cannot interfere with the inheritance, and if he goes into possession, or receives the rents therefrom, he holds the same, not as the assets of his intestate, but as the agent or trustee of the heir at law. *Walker's Appeal*, 116 Pa. St. 419, 9 Atl. 654. The same thing is true of an executor. He has no estate in the testator's lands by virtue of his office as executor. If rents accruing after the testator's death, come into his hands, he cannot apply them to the payment of debts or legacies. *Stoops' Estate*, 31 Pittsb. Leg. J. 34; *Fross' Appeal*, 105 Pa. St. 258. The general rule is, therefore, that an executor has no right to the possession of the testator's real estate unless it is given him by the will. An executor or an administrator may sell the real estate for the payment of debts or legacies, when the necessity for so doing is made apparent to the orphans' court, and an order is made by that court authorizing such sale, but until then they have nothing to do with it. The testator may, as the testator in this case did, authorize his executor to make such sale, and such authority appearing in the will renders an order by the orphans' court unnecessary.

The court concluded:

> Until actual conversion becomes necessary, the heir, and the residuary legatee as well, is entitled to the possession, as an incident to the title, and nothing but a positive provision in the will can deprive him of it. A power of sale does not work a conversion of the land, as between the executor and the heir or legatee. *Blight* v. *Wright*, 1 Phila. 549. But the title which accrued on the death of the testator remains in the heir or legatee until divested by sale made under an order of the orphan's court, or the power contained in the will. So long as the title remains undivested, the right to the possession remains. *Loan Co.* v. *Vincent*, 105 Pa. St. 315. If the executor collected the rents under an agreement with the residuary legatees that the amount

received should be held as assets, and used in the payment of the pecuniary legacies, this agreement should have been proved and relied on in the court below. No such agreement was shown. It is urged that a power to sell authorizes the executor to take possession, else he could not give possession to the purchaser. The reply is that the residuary legatees do not question his right to take possession for the purpose of making a sale. What they deny is his power to collect the rents and use them as assets of the testator. In this we think they are right, and the learned orphans' court committed no error in sustaining their contention.

Under the authorities cited, it is clear that the executors of Joseph W. Craig at no time had title to or control over the real estate devised to the petitioners; that they had no right as executors to collect the rents arising from such realty; and that the income from such realty was never income of the estate. It therefore becomes unnecessary to decide whether the estate of Joseph W. Craig was in process of administration in the years 1918, 1919, and 1920, the years involved in this proceeding. It is sufficient to hold that the income from the realty was not income of the estate of Joseph W. Craig. It was the income of the petitioners unless the contract of June 24, 1912, between them and the executors created a trust. If that contract created a trust, then income from the trust was taxable as provided in section 219 of the Revenue Act of 1918. If, on the other hand, the executors were only the agents of petitioners, then such income collected by the executors was the income of the petitioners and taxable to them.

The terms "agent" and "trustee" are thus distinguished in *Taylor* v. *Davis*, 110 U. S. 330:

A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal.

Applying the above definition, we find that by the third clause of the agreement, the executors were empowered to execute and deliver deeds and leases but only on "behalf of the parties hereto." The executors were to contract in behalf of their principals. That is, they were to contract as agents. This was not only the extent of the executors' authority under the contract, but when a conveyance was made, the deed was signed and acknowledged by all the petitioners by their attorneys in fact, the executors. The fact that the petitioners made the executors their attorneys in fact, conferred no new power on the executors as such. The result would have been the same if they had conferred the same authority on the same persons as individuals or on other persons.

108346°—28——36

Further, there is lacking one essential element of a trust. The legal estate was not conferred upon the executors; it was retained by the petitioners. There was no division of the title. In *Seymour* v. *Freer*, 8 Wall. 202, it was said:

A trust is where there are rights, titles, and interests in property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carried with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another.

In *Goodwin* v. *McMinn*, 193 Pa. St. 646; 44 Atl. 1094, the term "trust" is thus defined:

A trust is where the legal estate is in one and the equitable estate is in another.

The rule is thus stated in *Danforth* v. *City of Oshkosh*, 119 Wis. 262; 97 N. W. 258:

The question is whether the testator's intent involved the elements of a trust as known to the law. The most important of those elements is a severance of the legal title with power of control over the property from the beneficial interest therein. If the donee of the legal title is to control and manage the property entirely for his own benefit, there is no trust. 1 Perry Trusts (4th Ed.) § 13. "A trust exists where the legal interest is in one person and the equitable interest in another." *Wallace* v. *Wainwright*, 87 Pa. 263.

To the same effect see *Dillenbeck* v. *Pinnell*, 121 Iowa 201; 96 N. W. 860; *Allen* v. *Rees*, 136 Iowa 423; 110 N. W. 583; *Hospes* v. *Northwestern Manufacturing & Car Co.*, 48 Minn. 174; 15 L. R. A. 470.

The fact that it is provided in the first clause of the agreement that it is irrevocable for five years unless all the parties agree thereto, does not have the effect of changing what is a power of attorney into a conveyance in trust. A power of attorney as such may be irrevocable if based on a valuable consideration, especially where the consideration runs to others than the attorney in fact. See *Hunt* v. *Rousmanier*, 8 Wheat. 174; *Wood* v. *Kerkeslager*, 225 Pa. 296; 74 Atl. 174.

After careful consideration of all the provisions of the agreement of June 24, 1912, we are clearly of the opinion that that agreement did not create a trust and that the executors were under the agreement merely the agents of the petitioners. This being the case, the title to all the real estate involved remained in the petitioners as did also the ownership of all income arising therefrom, which was received by the agents for the benefit of their principals. All the parties, both agents and principals, kept their accounts on a cash receipts and disbursements basis. When the agents received income from the real estate, it belonged to their principals. The agents were acting for their principals and receipt by them of income was receipt by their principals.

Respondent did not err in taxing as income of petitioners, the income derived from the real estate devised to them by Joseph W. Craig.

The petitioners are, for the respective years in which deficiencies have been determined as to each, entitled to deductions for depreciation on the values and at the rates set forth in the findings of fact, and also to deductions for the amount of losses set forth therein, which were incurred in the operation for profit of certain farms.

The petitioners, Matilda S. McCready and Mary E. C. Brace, are entitled to have their gain arising from a sale in 1920 of the property 46–48 Eighteenth St., Pittsburgh, determined on the basis of its March 1, 1913, value, since that value was in excess of cost. The March 1, 1913, value was $38,400.

*Judgment will be entered on 20 days' notice, under Rule 50.*