# Duffy's Estate.

*Wills—Life estate—Coal lease—Jurisdiction of orphans' court—Executors and administrators.*

Testator owning a one half interest in coal which he and his cotenant had leased on a royalty, devised to his wife " during her life the use of all my interest, which interest is the undivided one-half in the coal," underlying the tract devised, with remainder to his nephew, who was also his executor.   *Held*, (1) that the widow was entitled to the full enjoyment for life of the use of all testator's interest in the coal; (2) that the period of her enjoyment commenced immediately at her husband's death; (3) that the widow was entitled to collect the royalties herself without the intervention of the executor, there being no debts; (4) that the orphans' court

had no jurisdiction to pass upon the account of the executor made up of royalties which he had wrongfully collected, and in which accountant had taken credit for various expenses and commissions.

Argued April 11, 1904. Appeal, No. 161, Jan. T., 1903, by James L. Lenahan, executor, from decree of O. C. Luzerne Co., No. 45 of 1898, disallowing charges and credits in executor's account in estate of Lawrence A. Duffy, deceased. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were the following extracts from the opinion of VOSBURG, P. J.:

(1) "I can see no material difference between these coal royalties and rents, so far as the right of the executor to receive and account for them is concerned."

(2) "I hold that the coal royalties were improperly included as a debt in the account of the executor, and that the orphans' court has no jurisdiction to pass upon this item."

(3) "That the item of money advanced to Mrs. Duffy be disallowed."

(4) "That the fund with which the executor charges himself and the item of money advanced to Mrs. Duffy be and the same are eliminated from his account and stricken therefrom."

*John T. Lenahan*, with him *Edward A. Lynch*, for appellant. —The orphans' court having jurisdiction over the estates of decedents, it follows the funds of the estate because of its large equity powers ; it need not call in the aid of a court of law : Tyson v. Rittenhouse, 186 Pa. 137 ; Yocum v. Commercial Nat. Bank, 195 Pa. 411 ; Caldwell v. Fulton, 31 Pa. 475 ; Sanderson v. Scranton, 105 Pa. 469 ; Gardner's Estate, 199 Pa. 524 ; Bender v. Luckenbach, 162 Pa. 18.

*William S. McLean*, for appellee.—That the coal rents in question belonged to the widow of Lawrence Duffy and that the widow had the right to receive and receipt for the same from the lessees is res adjudicata : Duffy's Estate, 17 Pa. Superior Ct. 244.

The coal rents belong as absolutely to the widow, as rentals of real estate, accruing after the death of the owner, belong to his heir or devisee.  Rent collected by the executor, and accruing after testator's death, is not a proper item of charge in his account, because he has no legal right to collect the rent. It belongs to the heir or devisee and is not an asset of the estate : Haslage v. Krugh, 25 Pa. 97 ; Bakes v. Reese, 150 Pa. 44.

Gardner's Estate, 199 Pa. 524, is not in point, because the debts of the decedent were not paid and the royalties were personal property and of course assets for the payment of debts.

OPINION BY MR. JUSTICE DEAN, June 15, 1904 :

On January 7, 1898, Lawrence Duffy of Luzerne county died ; at his death he was the owner of the undivided half interest in a tract of coal land in Plymouth township in said county.   In his lifetime he and his co-owner Patrick Lenahan by an agreement dated June 1, 1895, had leased the coal under the land at a price of 35 cents per ton payable monthly not less than a fixed quantity to be mined annually or contract forfeited.   The purchasers went into possession and mined coal up to the date of the lessor's death and afterwards.   On December 7, 1893, about four years before his death he had made his will in which he had devised to his wife, Winifred " during her life the use of all my interest which interest is the undivided one half in the coal " underlying the tract, with the remainder to his nephew James L. Lenahan, this executor.   It follows, that this devise of the land to the wife carried with it the testator's rights under the lease during the wife's life ; it was a devise to her of the land for life and by his death subsequent to the contract, it passed to her the monthly payments on the land as directly as if the devise had been a farm out of which the owner received an annual rental during his lifetime.   The devise is, " the use of all my interest, which interest is an undivided one half in the coal and other minerals underlying and contained " in the described land.   So that it is immaterial whether we call the contract a lease, or a sale of the coal in place, or a contract passing a right to the coal, the price to be measured by a minimum monthly royalty or rent ; it clearly put in the widow the full enjoyment for life of the use of all his interest in the coal, and the period of her enjoyment com-

menced immediately at her husband's death. True, it was subject to any debts existing at his death and costs of administration of his estate as in Gardner's Estate, 199 Pa. 524. But here, if the land was not subject to debts or other legal charges, which it was the lawful duty of the executor to pay, he had no authority to meddle with an estate specifically devised to the widow for her use as land. Any coal royalty or rents which were payable to the testator in his lifetime, necessarily went to the executor and he had a right to collect them, for the widow's life estate only commenced with her husband's death. But the words of the devise import a different estate in the land than the ordinary title or right; it in effect, points out the manner of its enjoyment. She is to have the use of the coal underlying the land; she could have no other use of it except to mine or sell it. She was, therefore, free from any impeachment of waste by the remainderman.

The very foundation of all the contention on this appeal is the first partial account filed by the executor. The docket entry notes that this account was filed on April 7, 1899; it is then indexed as being printed on pages 13 and 14. It is not there printed, but on page 8 what purports to be a first partial account is printed. In that the executor charges himself with having received $2,275; he does not mention from what source but that as appears from the testimony was coal royalty; he then claims credit with having paid out $2,240.75, leaving a balance for distribution to widow of $34.25. This account was audited and report of audit confirmed. Then on December 14, 1899, on petition of widow a rule was taken on the executor to show why he should not assign her the coal lease, for the reason that the executor had filed his account showing a balance due the petitioner which had been paid to her, and that there was no other property of the estate of her husband except the coal lease; that demand had been made upon the executor to assign to her the lease and he has refused. To this petition the executor made answer, denying her right to an assignment and alleging that as to the royalties or rents from the coal lease he was executor and an active trustee under the will; that it was his duty as an active trustee and remainderman to collect the royalties. After hearing the court dismissed the petition, from which decree

the widow appealed to the Superior Court. The court decided, see Duffy's Estate, 17 Pa. Superior Ct. 244, against the contention of the executor, and further that he was not a trustee for her, that there was no fund for him to conserve or duties for him to perform, and that the payments of royalties could be made directly to the widow without assignment of the lease.

On June 13, 1901, a remittitur of this decision of the Superior Court was filed in the court below, and on the next day, June 14, the executor filed what purports to be his final account in the orphans' court. In that account he charges himself with money received since his last account in years 1899, 1900 and 1901—$4,725. He claims credit for $1,925, advanced to widow by executor, also for counsel fees paid to Edward A. Lynch, Esq., $500, and to John T. Lenahan, Esq., $200; also charges for commissions, $47.25. He then claims credit for some small charges, officers' costs, etc, amounting to $77.25, making in the whole $2,702.75, which deducted from the debit left a balance in his hands of $2,022.25.

To this account exceptions were filed by the widow: First. To the jurisdiction of the orphans' court to pass on the executor's account embracing receipts of coal royalties. The second, fourth, fifth, sixth and seventh exceptions deny his right to officers' and clerks' fees, his charge for commissions and aver that he should have charged himself with interest on $2,800 which had remained in his hands for more than eight months. The third exception denies his right to a credit of $700, for counsel fees, not only because of want of jurisdiction in the court to allow it but also because it is exorbitant. The eighth and last exception denies the executor's authority to include in his account the entire sum received because it had been collected from coal royalties, after he had filed his first account on February 7, 1899, after he had been notified by her that he had no right to receive such royalties, and after appeal had been lodged in Superior Court to test the question in dispute. The auditing Judge TROUTMAN overruled all the exceptions except the third, on which last he deferred decree at request of counsel for widow that evidence might be taken to support it.

Substantially the same exceptions as those to the account were filed to the report of the auditing judge. These were

heard before Judge VOSBURG of the 45th district specially presiding.  Before final decree the third exception denying the right of the executor to credit for counsel fees was withdrawn by counsel for the widow.  The court overruled all the exceptions to officer's charges and compensation by the executor. This left only in dispute the debit of $4,725, and the credit claimed as advance to widow $1,925; as to these items while he affirmed generally the jurisdiction of the orphans' court over the accounts of the executor, yet as to these items he says:

" There may be a jurisdiction as to the forum within which an account of an executor should be settled, and yet there may be items in such account which cannot legally be settled, in the orphans' court."   Under the Act of the 16th of June, 1836, P. L. 784, among the powers expressly conferred upon the several orphans' courts in the state of Pennsylvania, is " The removal and discharge of executors and administrators deriving their authority from the register of the respective county, and the settlement of their accounts."

That the orphans' court has jurisdiction over the settlement of accounts by executors and administrators is unquestionable; but then comes the very question raised by the widow's first exception, what constitutes an account of an executor as executor?   Surely not what he chooses to make an account; it must be of some matter as to which either the will itself or the law has imposed upon him as a duty.   We look in vain through this will for an intention either express or implied on the part of this testator that the executor should have anything to do with these coal royalties, while the intention is plain that she should at once upon his death enter into the enjoyment of her royalties and execute his will in regard thereto.   In fact any execution of the lease is fully provided for by its terms in all particulars ; the legal party to move in such execution in case of his death is the widow as specifically directed by him by the explicit devise.   This is what we decide, and in effect what the Superior Court decided.   But the learned judge of the orphans' court only goes so far as to hold that under the decision of the Superior Court the orphans' court has jurisdiction to pass upon the accounts as to all the items except the two.   The widow has taken no appeal so we are confined solely to the appeal of the executor who complains in his assignments of error of that

part of the decree wherein the court below directs " that the
fund with which the executor charges himself and the item of
money advanced to Mrs. Duffy be and the same are eliminated
from his account and stricken therefrom."

We think the appellant, this executor and remainderman,
through all this persistent litigation with his uncle's widow
has fared much better at the end in the court below than he
would have fared here had we the same questions to pass upon.
By the will the use of the coal during her life was specifically
and explicitly given to the widow; as it is undisputed that
the testator had no debts, what right had the executor to col-
lect her money which she could as easily have collected herself,
and why burden the fund with costs, charges for services and
commissions to himself?   It seems to us, that this was a ques-
tion which should first have occurred to a prudent man before
he meddled with that which was none of his business.   But he
did collect as shown by his first account $2,275 of her coal roy-
alties, from which he deducted $68.25 commissions, $50.00 coun-
sel fees and $22.50 costs.   To which she submitted; but then,
doubtless, seeing how large a portion of her small estate was
being eaten up by expenses and charges, she concluded to col-
lect her own coal royalties and demanded from the executor an
assignment of the contract.   He refused.   Then on her petition
to the court setting forth clearly the justice and lawfulness of
her claim the court dismissed her petition ; she appealed to the
Superior Court ; that court pronounced her right clear but that
no formal assignment of the contract was necessary, that she
might collect the royalties directly from the coal operator.
Then the next day after this decision was filed in the court be-
low, he filed his second account showing that while she was
disputing his right and while her appeal was pending in the
Superior Court he had gone on and collected of her royalties
$4,725 more and deducted from this $700 attorney fees and
$77.00 commissions and costs.   For some reason best known to
herself, she withdraws her objection to the attorney fees and the
court overrules her other exceptions, leaving only for review
on this appeal before us the question of the jurisdiction of the
orphans' court.

We think the Superior Court was clearly right in holding
that the orphans' court had no jurisdiction over the accounts

of this executor, so far as they were made up of money from the coal royalties and so far as we can detect they were made up of nothing else. It made a mistake in not clearly saying so. Because the remainderman was executor of his uncle that fact gave the orphans' court no jurisdiction to pass on an account where he, in effect, admits that there wrongfully came into his hands money belonging to his uncle's widow. That court could not have compelled him by citation to account for such money, because it would have had no jurisdiction over either his person or the chattel. The only effect of the imperfect decree is, that he gets away from a jury in a court which has jurisdiction into one which has none.

The learned judge of the orphans' court, taking the meagreness of the decree in the Superior Court as the law settling the jurisdiction says: "I hold that the coal royalties were improperly included as a debit in the account of the executor and that the orphans' court has no jurisdiction to pass upon this item. Taking the items of credit (naming the counsel fees and other charges) we have a different proposition before us." The logic of this reasoning is not apparent, when we take the undisputed facts, that every one of the items of credit is claimed by the executor for efforts, professional and otherwise, to wrongfully get hold of and retain this widow's royalties and that he got no other nor tried to get other property. The proposition is something like this: an executor wrongfully gets into his hands a large amount of money belonging to another; the orphans' court has no jurisdiction to pass on his accounts of such money yet has jurisdiction to allow him to deduct a large sum for his trouble in getting it. The strongest reason given in any of the opinions for sustaining the decree as to the jurisdiction is that given by Judge Troutman as follows: "Nor is the exceptant at all injured by our retaining jurisdiction; all her rights are conserved and all her claim can be disposed of in the orphans' court as completely and as well as in any other forum to which she might obtain resort." The trouble, however, with this reason is, that it is not the law, and probably would be as much in point, if this executor had filed his accounts in the courts of oyer and terminer or quarter sessions.

We think it clear that the orphans' court had no jurisdiction whatever of these coal royalties, but as before noticed the

widow has voluntarily, except as to these two items submitted to that jurisdiction. The executor brings this wholly groundless appeal; it is dismissed and the decree of the court below affirmed.