## Schick Estate.

Argued March 6, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*John W. Bour*, with him *James K. Peck*, for appellants.

*Walter L. Hill, Jr.*, with him *O'Malley, Harris, Harris & Warren*, for appellee.

Opinion by Dithrich, J., July 19, 1951:

This is an appeal from a decree of the Orphans' Court of Lackawanna County which, after hearing the case on the pleadings, dismissed a petition for an inquest in partition of certain real estate on the ground that the petitioners had no present interests therein as co-owners thereof.

The real estate in question was the only real estate owned by William P. Schick at the time of his death on November 15, 1940. He left surviving him six children, namely, the petitioners, the respondent Sophie Dippre, and Fred Schick. His will set forth: First, a direction to pay debts; second, a devise of his entire estate to trustees for designated purposes, to wit:

"(a). As to my real estate located at and known as Number 953 East Elm Street in the City of Scranton, Pennsylvania, I direct that, in case that my said son, Fred Schick, should marry and desire to establish a home for himself, the Trustees herein named shall make a deed to him for the said property. Until said property is conveyed, either to my son or to a purchaser thereof, I direct that my said trustees shall manage and control the said premises and to collect the rent therefrom and pay the cost of upkeep thereof, including taxes, water rents and insurance. In case that my said trustees should deem it desirable or advisable to sell the said premises, then and in that event I hereby authorize and direct my said trustees to make sale of the premises to any purchaser or purchasers thereof, and to that end and purpose I hereby vest in my said trustees full power and authority to make, execute and deliver a sufficient deed or deeds to the purchaser or purchasers thereof for said premises. In the event of the sale of said real estate, I direct that the proceeds of such sale shall be paid over unto my son, Fred Schick, his heirs and assigns. . . .

"(c). I direct that my trustees shall distribute un-

to my five children, to wit, Lena Thomas, Emma Spathelf, William Schick, Charles Schick, and Sophie Dippre, in equal shares, their heirs and assigns forever, the moneys on deposit in my name in the New Citizens Building and Loan Association, of Scranton, Pennsylvania.

"(d). All the rest, residue and remainder of my estate I direct shall be distributed in equal shares to my six children, to them, their heirs and assigns."

Fred Schick died testate, but unmarried, November 4, 1944. The real estate devised in trust was never sold or conveyed by the trustees. Respondent has been in exclusive possession since the death of her father, William P. Schick. No income, in the form of rentals or otherwise, has been collected therefrom.

Petitioners contend that, under the trust provisions of his father's will, Fred Schick had an interest in the realty in the nature of a contingent remainder, the contingency precedent to vesting being his marriage. Pending the happening of that event, petitioners maintain, the equitable interest in the realty was vested in all the children of William P. Schick in equal shares by way of resulting trust; and when the event became impossible of occurrence, i. e., at Fred's death, these interests became absolute. They further contend that Fred's death also marked the termination of the trust, the theory being that it thereby became passive with the consequence of a merger of the legal title with the equitable title of the heirs of William P. Schick under the Statute of Uses.

The respondent contends that the provisions of William P. Schick's will, already referred to, vested full beneficial ownership of the realty in Fred Schick and that his interest passed to her under his will, which provided in part: "Fourth: All the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever nature or kind and wheresoever the same

may be situate, I give, devise and bequeath to my father, William Schick, and to my sister, Sophie Dippre, or the survivor of them absolutely, and in case that my father, William Schick, predeceases me, or dies before distribution of my estate is had, all of said rest, residue and remainder shall pass and go to my sister, Sophie Dippre, and in case that she should predecease me, or die without leaving issue before distribution of my estate is had, then her share shall pass to my father, if living, and in case he shall have died, then to my brothers and sisters and their heirs."

It is apparent from the respective positions of the parties that the determination of this appeal depends upon what interests were created by the pertinent provisions of the will of William P. Schick, quoted above. Was the gift to Fred merely a contingent interest, or does the language of the will support a conclusion that he was vested with the full beneficial ownership of the realty involved? After a careful consideration of the language of the will we agree with the lower court, which said in an opinion by BRADY, P. J.: ". . . the expression and intention of the testator was to give the whole beneficial interest in the real estate to his son, Fred Schick."

Of course, it must be said at the outset that, in the last analysis, our purpose is to interpret the provisions of the will before us in accord with the manifest intention of the testator. In *Keefer Estate,* 353 Pa. 281, 45 A. 2d 31, the Supreme Court said (p. 283) : "The 'pole star' long fixed for the guidance of courts in interpreting wills is a testator's intention. In Anderson's Estate, 243 Pa. 34, 89 A. 306, this court said: 'It is a cardinal rule that the actual intent of the testator must prevail when it can be ascertained' from the language of his will." See also *Ziegler Estate,* 356 Pa. 93, 51 A. 2d 608; *Fidelity-Philadelphia Trust Co. v. Klinger,* 162 Pa. Superior Ct. 294, 57 A. 2d 608; *Weaver*

*Estate,* 162 Pa. Superior Ct. 578, 60 A. 2d 404. This intention must be gathered from the instrument as an entirety; or, as stated in *Blair v. Shannon,* 349 Pa. 550, 555, 37 A. 2d 563: "'. . . the testator's intention must be ascertained from the four corners of the will.' . . ." See also *Parkin Estate,* 157 Pa. Superior Ct. 476, 478, 43 A. 2d 595.

It is not an uncommon practice of testators, as here, to relate their gifts to the occurrence of the marriage of the donee. But the mere use of words to that effect does not in every case create a contingent rather than a vested interest in the subject of the gift. "Gifts to be paid on the marriage of the legatee are the common examples of gifts held contingent because of the uncertain nature of the event upon which they are payable; but in some instances gifts in this form have been held vested because of *countervailing circumstances* overcoming the effect of the uncertain nature of the event on which they were payable, such as a direction for payment of intermediate income to the legatee or the absence of a gift over." (Emphasis added.) 57 Am. Jur., Wills, §1227. ". . . unless it can be *reasonably inferred from other parts of the will that the testator intended to annex the condition of marriage only to the possession and enjoyment* rather than to the gift itself, a gift to one 'when,' or 'if' or 'in case,' the beneficiary marries . . . is contingent." (Emphasis added.) 69 C. J., Wills, §1693.

It is clear to us that there are "countervailing circumstances" here and also that "it can be reasonably inferred from other parts of the will that the testator intended to annex the condition of marriage only to the possession and enjoyment" of the gift. Consequently, our conclusion must be that this gift was vested and not contingent, notwithstanding the reference to a possible marriage of Fred, the donee. A reading of the will at once discloses a general intention of the testator to

benefit his children equally. Clause (c) of the paragraph creating the trust provides for a distribution of certain money on deposit with a building and loan association among "my *five* children", Fred being the excluded child. (Emphasis added.) Clause (d) of that same paragraph distributes the residue of his estate among "my *six* children", Fred being an included child. (Emphasis added.) It seems reasonable to infer from the residuary disposition that equality among the children was intended and that pursuant to that intendment the testator was obliged to exclude Fred from clause (c) as a result of his nomination of Fred as sole beneficiary under clause (a). Equality among heirs being the testator's object, it is difficult to subscribe to a construction of clause (a) which would annex a condition precedent to the vesting of Fred's proper share, for thereby inequality would be permitted where equality was intended. It is, rather, more consistent to avoid any such construction which would frustrate the testator's obvious intention. It should be noted that this is not contrary to petitioners' view of justice, their brief containing the following statement: "If possible, a will should be construed so as to give the estate to the testator's children equally." While we have gleaned the testator's intention of equality among heirs from a reading of the will itself, we are supported in that finding by a settled rule of construction. The rule is stated in *Sharar's Estate,* 136 Pa. Superior Ct. 478, 483, 7 A. 2d 506, as follows: "Any permissible interpretation is to be preferred which will preserve the equality of benefit among the testator's children. See Hirsh's Trust Estate, 334 Pa. 172, 177, 5 A. 2d 160. ' "A construction which . . . . . . works an invidious distinction between the heirs, is to be avoided where possible": Edelman's Est., 276 Pa. 503, 508, 120 A. 457.' "

There are additional circumstances which militate against a denial that the testator's will vested full bene-

ficial ownership in Fred the moment he (the testator) died. For example, in clause (a) provision is made for a discretionary sale of the real estate with a direction that "the proceeds of such sale shall be paid over unto my son, Fred Schick, his heirs and assigns." If the trustees had sold the property during Fred's lifetime there would have been no doubt as to his absolute entitlement to the proceeds. The gift of the proceeds had no time or other limitation annexed to it, and, indeed, was given to Fred, *his heirs and assigns*, the very words used in clause (c) to confer absolute interests in the personalty. To construe the gift as being subject to a condition precedent to vesting, viz., marriage, would result in this inconsistency: So long as the gift remained realty, Fred's bachelorhood would have barred its vesting in him, even in interest; but a mere happenstance, making its conversion into cash desirable, would not only have been sufficient to vest in Fred an estate in interest, but would, in fact, have vested in Fred an estate in full possession as well, and this irrespective of his bachelorhood.

In our opinion no such inconsistency was intended. The testator no doubt had in mind that it would be more provident to withhold exclusive possession of the estate from Fred until he had real need of it, as a home, but the withholding of possession does not, as we have seen, prevent a vesting in interest. The purpose of the power of sale was doubtless to protect against a diminishing of the estate in the event of declining property values or other exigency. Adding the two thoughts together, the sum is the proper characterization of the provision relating to marriage, not as a condition precedent to vesting, but as found in the opinion of the court below: "The right given to the beneficiary in the event that he should get married and desire to establish his home in the property was an elective right, and when exercised, with notice or direction to the trustees, would

terminate their power of sale." It fixed the time when the gift would vest in possession and enjoyment.

The case of *Hyde v. Rainey*, 233 Pa. 540, 82 A. 781, lends force to the argument that the absolute gift of the proceeds in the event of sale indicates that an unconditional gift of the realty if unsold was also intended. In that case a testatrix devised her farm to her son and his children. Following that she provided (p. 543): ". . . *if the farm* on which I reside *shall be leased* for the purpose of mining for coal, gas or oil that the *proceeds* of the lease *shall be divided* between my four children . . . share and share alike." (Emphasis added.) It was there held that the only reasonable inference to be drawn was that the testatrix intended a devise of the surface of the farm to the son and a devise of an absolute estate in the minerals to her four children. The Court said (p. 548): ". . . an unlimited gift of the proceeds vests in the beneficiaries an absolute estate in the corpus from which the proceeds arise: Carlyle v. Cannon, 3 Rawle, 489; Roberts's App., 59 Pa. 70; France's Est., 75 Pa. 220; Beilstein v. Beilstein, 194 Pa. 152; Duffy's Est., 209 Pa. 390."

The absence of a gift over indicates that the testator did not intend the creation of a contingent estate. *Renner Estate*, 358 Pa. 409, 57 A. 2d 836; *Rickenbach Estate*, 348 Pa. 121, 34 A. 2d 527; *Brown's Estate*, 289 Pa. 101, 137 A. 132. Moreover, the failure to make a disposition of income pending Fred's marriage is evidence that the full beneficial ownership was considered as having been placed in Fred. Finally, it must be borne in mind that an interest is to be construed contingent only when it is impossible to construe it as vested. *Renner Estate*, supra; *Rickenbach Estate*, supra; *Edelman's Estate*, supra; *Singer's Estate*, 116 Pa. Superior Ct. 32, 176 A. 519.

Each will is necessarily a law unto itself. The variety of purposes and modes of expression found in wills

gave rise to the familiar phrase, "No will has a brother." It is not strange, therefore, that our construction of the will here is made without the benefit of a controlling Pennsylvania case on all fours with this one. *Doebler's Appeal,* 64 Pa. 9, *Roberts's Appeal,* 59 Pa. 70, and *Reilly v. Kerestes,* 70 Pa. Superior Ct. 71, cited by respondent, while bearing on the instant case, are nevertheless distinguishable and cannot be of controlling importance. Our decision rests on a reasoned interpretation of the language of the will, in light of circumstances contained therein, supported by the well-settled rules of construction.

However, of persuasive significance is the Iowa case of *Toner v. Collins,* 67 Ia. 369, 25 N. W. 287, a case closely in point. There the testator left surviving him three children, a son and two daughters. By will he provided as follows (p. 372) : "My said executors shall have the management and control of said property by me devised to them in trust for my said children, and they are to have the control and management thereof until they shall get married; and when any of my said children shall marry . . . then the part or portion of property herein devised, or the proceeds thereof, as shall be provided for hereafter, shall be and become the property of said child so marrying, and my said executors shall make the necessary conveyance thereof so as to vest absolute title in said legatee." One of the children died unmarried, leaving a will in which B was named residuary legatee. Held: when the will is construed as a whole it cannot be determined that it was testator's intention to make the marriage of his children a condition precedent to their taking a vested estate. On page 374 the Court said: "There is no bequest over. The will makes no provision for the disposition of the property covered by any of the bequests in case of the failure of any of the children to marry. . . . Clearly, we think, it was not the intention

of the testator to make such marriage a condition precedent to the vesting of a beneficial estate in the property in the legatees. But the provision with reference to their marriage was inserted in the will for an entirely different purpose. Having by the preceding provision created a trust estate . . . the testator inserted the clause in question for the purpose of creating a condition on the happening of which the trust should terminate, and the legatees be entitled to be clothed with . . . the right to the control and management of the property."

We adopt the language of the learned President Judge of the court below in disposing of the contention that on the death of the beneficiary the trust terminated, having been executed by the Statute of Uses: "The Court cannot agree with this contention. Until there is a conveyance, the trustees have the duty to manage the property. The legal title is still in the surviving trustees; therefore, to clear the title, proceedings to terminate the trust and transfer the title to the beneficiary should be had. Restatement, Trusts, Secs. 345 and 346; Harrar's Estate, 244 Pa. 542. As to the net rentals, that question can be met in the accounting of the testamentary trustees. See Haak's Estate, 165 Pa. Superior Ct. 180."

Decree affirmed at appellants' costs.