## Sawtelle Estate

Before Klein, P.J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Morris Goldman*, guardian and trustee ad litem, for exceptant.

*Cuthbert H. Latta*, contra.

SAYLOR, J., October 26, 1962.—This case concerns the power of the court to reform an irrevocable deed of trust by including as beneficiaries adopted children of one of the settlors where the deed provided only for their issue.

On December 30, 1935, a brother and four sisters created the deed by assigning as corpus of the trust their respective remainder interests under the will of

their maternal grandfather, George E. R. Burpee. Their prospective interest was to vest in possession at the death of their mother. Provision was made for payment of one-half of the income to settlors' father for life and the other half in equal shares to the settlors. After the death of any settlor, his or her share of the income was to be paid "to his or her issue per stirpes during the continuance of said trust." On the death of the last surviving settlor and upon the youngest child of any of the settlors attaining his majority, the principal was to be "paid over . . . to the issue then living of said Settlors per stirpes . . ."

Settlors' father died before the trust became operative. Their mother died in 1941, whereupon the trust principal was turned over to the trustee.

The primary purpose of the trust was to protect the five settlors during their lifetime, and thereafter their children, against the dissipation by any of their spouses of the family inheritance such as one of the settlors had previously suffered. The deed was prepared by counsel for the settlors' parents and was executed by the settlors at the request of their parents without the settlors receiving advice from counsel as to the significance of the word "issue" and without discussion either with counsel or parents of any provisions of the deed beyond the general idea of creating the trust.

Janet Sawtelle Peake, one of the settlors, adopted a child named Sandra on January 5, 1942, after learning that as a result of surgery she could never bear children. She adopted a second child on February 23, 1944.

On September 16, 1942, following the death of their mother who had expressed unequivocally her opinion that adopted children should be entitled to take under the deed, an instrument was executed by the five settlors which provided that "to remove any doubt which

may exist as to their intention to include within the meaning of the terms "issue" and "child" any adopted child, and that such terms wherever used in the original deed were "intended to include any children adopted by the settlors or by the settlors' issue."

On March 29, 1956, one of the settlors, Eleanor Otis Sawtelle, died, unmarried and without issue.

On January 31, 1962, the corporate trustee filed its second account of the trust. On February 21, 1962, Janet Sawtelle Peake, one of the four then living settlors, filed her petition for citation on all parties in interest to show cause why the deed of trust should not be reformed so as to incorporate the provisions of the supplemental indenture. On February 21, 1962, the court appointed Morris Goldman, Esq., guardian ad litem for four minor children and ten minor grandchildren of settlors and trustee ad litem for all other persons unborn or unascertained who might have an interest in the trust.

In their answer the remaining settlors admitted the averments of the petition and consented to the proposed reformation of the deed. All adult children born of the settlors were served with the citation but none of them filed any answer. The guardian and trustee ad litem filed an answer and requested the court to dismiss the petition.

On May 7, 1962, following hearing, Judge Lefever granted the prayer of the petition and affirmed the account before him. Thereafter, as instructed by the auditing judge, Mr. Goldman filed exceptions to the adjudication.

There is no question that this court enjoys exclusive jurisdiction over the trust before it. No court exercised any such jurisdiction until 1956, when the trustee submitted its first account to this court for audit. Thereby under section 301(3) of the Orphans' Court

Act of August 10, 1951, P. L. 1163, this court acquired exclusive jurisdiction. By virtue thereof it may wield all the powers of a court of equity (Wilson v. Board of Directors of City Trusts, 324 Pa. 545, 550-52 (1936)), including the power to reform for mistake (Fisher Estate, 26 D. & C. 2d 351 (1962); Comly's Estate, 16 D. & C. 336 (1932)). Accordingly, the only matter in dispute is whether this is a proper case for reformation of the deed.

At the hearing on petition and answer, it was testified that at the time of the execution of the deed the petitioner was single and just one month beyond the age of 21 years; that her brother was 31 and married; her sister Louise was 28 and married, with three children; her sister Eleanor was 21 and single; and her third sister, Margery, was 18 and single. The preparation of the deed of trust by an attorney was arranged by their parents to protect their children from possible dissipation by any spouse of the settlors of the inheritance they would receive from their grandfather's estate on their mother's death. Only the parents saw and conversed with the attorney, except possibly Louise. None of the settlors had anything to do with the writing of any provisions of the deed or the use of any specific words therein. No advice as to the deed was given by the attorney to any of the settlors. Nothing was said to them about the use of the word "issue" in the deed, and there was no mention made or discussion had as to including adopted children in the deed. The two settlors who testified said that when they executed the deed they knew of no distinction between the word "issue" and the word "descendant". To them the words would have meant the same thing. The petitioner said that not until 1940 did she know that as the result of an operation she could never have children, whereupon she made arrangements for the adoption of the child Sandra.

Petitioner's sister Margery testified that she was 18 when the trust was created, that she did not remember that there was any discussion as to whether adopted children could take under the trust, and it did not come up until her sister Janet adopted her child. Nor was there any discussion of the word "issue". Settlors at a family meeting discussed the situation concerning the adopted child and as a result the supplement to the deed was drawn up and executed by all of them. Both the petitioner and her sister who testified had high school educations.

The petitioner maintains that the deed fails to express the true intent of the settlors and should be reformed because there was a mistake of fact and law. The guardian and trustee ad litem argues that the facts as to the execution of the deed are not indicative of mistake.

The Supreme Court in Irish v. Irish, 361 Pa. 410, 412 (1949), held that "under appropriate circumstances a court in equity may reform a deed". Mr. Justice Stearne, at pages 412-13, said: "Whether the omission in the deed was in truth and in fact a mistake or inadvertence depends upon the findings of fact of a chancellor who sees and hears the witness, and which, if approved by the court in banc, would warrant a decree of reformation."

In Bispham's Principles of Equity, 11th Ed. 1931, sec. 165, it is said:

"Relief [through reformation] is sometimes given . . . in cases of surprise—that is, where parties have entered into arrangements unadvisedly and improvidently, and without due deliberation; so, also, in some cases where the law is confessedly doubtful, and the question is one about which ignorance may well be supposed to exist": p. 169.

The testimony shows that in the instant case the settlors, being but from 18 to 31 years old, assuredly

acted without due deliberation and without proper advice. There was no discussion of the provisions of the deed by which they voluntarily disposed of their property. Considering their immaturity and lack of understanding of the legal consequences of the deed they executed, it is apparent that the settlors had no intention to limit the field of ultimate beneficiaries to those of their children who were born to them. There was no appreciation by them of the difference between what is legally meant by "issue" and what is legally meant by the word "child". There could not have been any deliberation as to the consequence of the employment of the word "issue". There is no evidence other than the presence of that word throughout the deed that there was an intent to use it in its restricted sense. There is evidence that the settlors intended that issue should take but no evidence of intention that adopted children should not take. The testimony indicates that the settlors gave no thought at all to the question of adopted children and hence did not intend that they should take or should not take. Their minds were not employed on the point of difference in the two kinds of children, and consequently the intent expressed in the deed exceeded the actual intent that was present in their minds. Under Irish v. Irish, there was a mistake in the deed in that more in the matter of intent was included than the settlors had in their minds to place there.

Russell's Appeal, 75 Pa. 269 (1874), sets forth the law of Pennsylvania in cases of "surprise", as referred to by Bispham. There the court allowed settlor's request that her deed be amended because it failed to take care of an important contingency and no one, including the lawyer-scrivener, had pointed out to her the possibility of such a contingency. Consequently, settlor's mind was not directed thereto and this constituted a mistake that justified equitable relief. Said Chief Justice Agnew (pages 289-90):

"The mistake here was in not perceiving and being conscious that a case was left unprovided for which might happen, and in which event the settlor . . . would desire to make a provision agreeably to her wishes and will. The settlement . . . failed to provide for the case of (the intended husband) . . . dying first without issue by her. This was a state of fact not presented to her mind, and therefore she did not see the legal operation of the deed upon the happening of this contingency became different from what she would have provided had the fact occurred to her. . . . There was a complication of contingencies presented to an unpractised mind, unaided by the counsel of her legal adviser, in the very particular in which her mind ought to have been instructed, involving the occurrence of future facts, to which her attention ought to have been directed. . . . In his (the settlor's legal adviser) own expressive language . . . 'there was a total silence on the subject'. Silence, in such a case, where an inexperienced young lady is called upon to act in a matter of so much importance in the future, is more expressive than words . . ."

In our opinion that is still the law in Pennsylvania. Counsel for the exceptant states that Curry Appeal, 390 Pa. 105 (1957), overruled this "case decided in the 'dark ages' of Pennsylvania Trust Laws." The doctrine of Frederick's Appeal, 52 Pa. 338 (1866), therein referred to, so far as we can see was not even mentioned in Russell's Appeal, supra, and Frederick's Appeal was not cited. The doctrine apparently repudiated in Curry Appeal is foreign to the issue in Russell Appeal, supra, and to that before us here. Moreover, Scholler Trust, in which Judge Bolger of this court relied on Russell's Appeal, was affirmed by the Supreme Court (403 Pa. 97 (1961)) a few years after Curry Appeal was decided.

Here we have a young woman just having reached her maturity entering into a solemn agreement with her brother and sisters, almost as young or younger, and doing so without legal advice, let alone discussion or explanation of the consequences of her act. Surely, if she had been told then that she could never have children born to her, is it possible to assume that she would not have expressed a desire to protect the interests of any child she might wish to adopt? Surely, she would have insisted that it should enjoy the same privileges as any child born naturally to her brother's wife, or to her sisters. And, being told that the word "issue" precluded this possibility, would she have executed a document that restricted the devolution of the trust res to "issue", thus denying to a child she might adopt what was to be given to the children of her brother and sisters?

Petitioner and the other settlors in creating their trust most assuredly acted "unadvisedly and improvidently, and without deliberation", in the words of Bispham.

The rule that ordinarily reformation is not available where consideration has passed does not apply, because here the consideration passed back and forth from brother to sister. All four settlors seek reformation of the deed. Their adult children do not object to reformation. Only the guardian and trustee ad litem objects, as he should, it being his duty in representing minor brother and sisters of those adult children and those who might yet be born.

While it is true that the paramount intention of the settlors in creating the trust was to protect themselves during their lifetime from improvident spouses, that does not bar us from consideration of the equities involved in the final disposition of the trust res. Settlors were disposing of their own property, not merely to protect it from "improvident spouses" and to assure

income therefrom for their father and themselves, but also to insure its ultimate possession by their children. And by "children" they meant those to whom they were parents, born of the body or adpoted. Hence, there is no doubt that, had they known the legal significance of the words "issue", "child", and "descendant", with which learned lawyers and judges have had more or less difficulty (see Howlett Estate, 366 Pa. 293 (1951) ; Collins Estate, 393 Pa. 195 (1958) ; and Storb Appeal, 400 Pa. 567 (1960)), they would not have made the mistake of executing a deed that provided that "issue" should take and did not properly evidence their intentions and legally effect their purposes.

We are supported in our opinion by language of President Judge Klein of this court employed in three instances where the rights of creators of trusts by deed were considered.

In Goodell's Estate, 53 D. & C. 13 (1945), Judge Klein said (page 21) :

"In studying the deed of trust before us for construction we must bear in mind that the estate, which is the subject matter of these proceedings, was, in fact, the property of the settlor. He created this trust as a protection and convenience for himself and the members of his family. In my opinion, the deed must therefore be construed in a benevolent spirit, giving the settlor every benefit of construction and resolving all doubts and uncertainties in his favor . . ."

In Fisher Estate, 26 D. & C. 2d 351 (1962), Judge Klein used this language (pages 367-368) :

"The court is satisfied that the rights of the designated minors and such descendants as may be born hereafter are fully protected under the proposed reformation, and any slight disadvantage that might result with respect to any individual will be more than compensated by the advantages which will accrue to the family as a whole."

The Supreme Court in Schautz Trust, 395 Pa. 605 (1959), speaking through Mr. Justice Musmanno, where revocation of a trust was involved, said (page 612) :

"Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of the trust are not to become weapons against him unless no other interpretation is possible . . ."

That decision and the quoted language are recited by Judge Klein in Friedrich Estate, 26 D. & C. 2d 51, 59 (1962), in adjudicating rights under a revocable trust where there was a question as to the validity of an amendment. Judge Klein in validating the amendment said, inter alia:

"This conclusion not only results in completely equal distribution among settlor's five sons, but also gives full effect to her clearly expressed intentions . . ."

The auditing judge had previously said that a construction which works an invidious distinction between the heirs is to be avoided where possible and "any permissible interpretation is to be preferred which will preserve the equality of benefits among the settlor's children who are named as beneficiaries."

In distributing an estate among a settlor's children, there is a strong presumption that he intends equality: Laughlin Estate, 354 Pa. 43 (1946) ; Schick Estate, 169 Pa. Superior Ct. 226 (1951). The settlors must be presumed to have intended equality per stirpes among their children, born to them or adopted by them.

The original intent of the settlors, mistakenly and negligently left absent in the deed and promptly expressed in the supplement once the parties understood the matter, was that all "children" of them and each of them, born to them or adopted by them, were even-

tually to take their respective shares of the trust res. Settlors unanimously ask the court to assure the effectuation of this intent by permitting the reformation of the deed prayed for. Under the law it is our opinion that not only is such a case as this within our jurisdiction to consider but well within our equitable powers to decide as the petitioner requests.

The special circumstances of this case are these: 1. The original owners of the trust res are wholeheartedly and unanimously in favor of the amendment; 2. settlors were immature and inexperienced when they executed the trust deed and they did so without deliberation, discussion or full understanding of the consequences of their act; 3. settlors acted without the benefit of legal advice; 4. settlors have entered into a family agreement that assures to the next generation the right to enjoyment of that equality of participation now harmoniously possessed by the settlors. There is great merit in approving such an arrangement. This court finds no error in the decision of the learned auditing judge and affirms the decree reforming the deed of trust so as to incorporate the provisions of the supplemental indenture.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.